**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**NICOLE KEES**,

        Plaintiff,

**v.**

                                              **CIVIL ACTION NO. 2:13-CV-34**
                                              **(BAILEY)**

**LORI NOHE**, Warden,

        Defendant.

## ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Seibert for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Seibert filed his R&R on January 8, 2014 [Doc. 26]. In that filing, the magistrate judge recommended that this Court grant Respondent's Motion for Summary Judgment [Doc. 14], deny as moot petitioner's Motion to Compel [Doc. 45] and Motion to Appoint Counsel and for Evidentiary Hearing [Doc. 25], and dismiss petitioner's § 2254 petition [Doc. 1] with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is timely made. However, the Court is not required to review, under a *de novo* or any other

1

standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); ***Snyder v. Ridenour***, 889 F.2d 1363, 1366 (4th Cir. 1989); ***United States v. Schronce***, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. The petitioner timely filed her objections [Doc. 28] on January 22, 2014. Accordingly, this Court will conduct a *de novo* review of the portions of the magistrate judge's R&R to which the petitioner objects. The remainder of the R&R will be reviewed for clear error.

## I.   Facts

As Magistrate Judge Seibert set forth a comprehensive account of the facts in his R&R, this Court's factual summary will be brief. On January 12, 2004, Nicole Kees, petitioner, and one Jashua Frocke, decedent, hatched a scheme to obtain money in order to purchase drugs. A mutual friend, Aaron Polkey, drove petitioner and Frocke to two different banks, where petitioner and Frocke wrote, forged, and uttered two bad checks. [Doc. 14-2 at 80–82[1]]. On their way to the first bank, Frocke told Polkey that he (Frocke) had just injected the last of his heroin. *Id.* at 108–09.

After stealing the money, the three drove to a trailer located near a convenience

---

[1]  Most of the parties' exhibits are large PDFs which contain multiple documents, each of which has separate internal pagination. The page numbers cited for each exhibit will therefore correspond to the page numbers assigned by CM/ECF.

store.  *Id.* at 84.  Petitioner exited the car, entered the trailer, and allegedly purchased a bag of heroin with the stolen money.  Petitioner then returned to the car where Frocke and Polkey were waiting and asked Polkey to drive them to a nearby Sheetz convenience store. Polkey testified that both petitioner and Frocke went into the Sheetz and came out "acting really stupid," leading Polkey to believe that petitioner and Frocke used heroin while inside the Sheetz.  *Id.* at 86.

After leaving the Sheetz, Petitioner suggested that the group get a motel room.  The three picked up another friend, one Richard Chamblin, and headed to the Krista Lite Motel in Martinsburg, West Virginia.  *Id.* at 87.  Frocke rented a room for the group.  After entering the room, petitioner removed a bag containing approximately one gram of heroin from her purse.  *Id.* at 88.  Frocke asked petitioner to give him his half of the heroin; petitioner did so.  *Id.* at 88–89.  Both petitioner and Frocke then began to inject heroin.  *Id.* at 89.

Later that evening, one James Robinson, petitioner's then-boyfriend, joined the group at the motel room, and injected heroin upon his arrival.  At some point, both petitioner and Frocke shared their heroin with the group, all of whom injected and snorted heroin throughout the evening.  *Id.* at 91–92.

Testimony as to how the evening ended differed.  According to Robinson, when Frocke began to make himself a bed on the floor, Robinson decided to leave the motel room with petitioner.  *Id.* at 168–69.  Robinson testified that as he and petitioner were leaving, he said goodbye to Frocke, who replied, "I'll see you later."  *Id.* at 171. Alternatively, according to Polkey, Frocke went to sleep on the floor while petitioner and Robinson were still present in the motel room.  Polkey testified that while Frocke was lying

on the floor, petitioner, Robinson, and Polkey heard Frocke "make a gasping noise"; petitioner then nudged Frocke with her foot and exclaimed, "oh, my God, he's dead." *Id.* at 94. Neither petitioner, Robinson, or Polkey called 9-1-1 immediately, as the three were afraid to call for help while in possession of drugs. *Id.* at 95. Petitioner and Robinson then left the motel, followed by Polkey, who left after finding his keys. *Id.* at 94.

The next morning, January 13, 2013, a clerk at the Krista Lite Motel received a phone call from petitioner. *Id.* at 174. Petitioner indicated that she had left some clothing in the motel room the night before, and requested that the staff hold the clothing for her at the front desk. *Id.* After the phone call, Krista Lite Motel personnel discovered Frocke's body in the motel room. *See id.* at 174–75.

Police officers who responded to the scene found heroin and paraphernalia associated with the use of heroin on Frocke's body, in a jacket belonging to petitioner, and in other locations in the motel room. [Doc. 14-1 at 7–8]; [Doc. 14-2 at 198–204]. According to the Berkeley County Medical Examiner, Frocke "died as a result of heroin intoxication in the setting of intravenous drug abuse," meaning that Frocke died of a heroin overdose. [Doc. 14-1 at 36].

Officers conducted an initial interview with petitioner early that evening. Following that interview and interviews with Polkey, Robinson, and Chamblin, police developed petitioner as their primary suspect in Frocke's death. [Doc. 14-1 at 7].

II. **Procedural History**

On September 30, 2004, petitioner was convicted of murder in the first degree under the felony murder doctrine of the delivery of a controlled substance following a jury trial in

the Circuit Court of Berkeley County, West Virginia. [Doc. 14-3 at 71:3–10]. Based on the

jury's recommendation of mercy, petitioner was sentenced to life in prison with eligibility for

parole in fifteen (15) years. [Doc. 14-4 at 4]. On May 14, 2007, the Circuit Court entered

an Order re-sentencing petitioner, which allowed her, on November 21, 2007, to timely file

a direct appeal of her conviction to the Supreme Court of Appeals of West Virginia. *Id.* at

45.

On direct appeal, petitioner raised four assignments of error:

1. The court erred by failing to direct a verdict in petitioner's favor at the close of the evidence, or alternatively, the verdict was contrary to the evidence;

2. The court erred by denying petitioner's proffered jury instruction on the lesser-included offense of delivery of a controlled substance;

3. The prosecutor misstated the law regarding the offense of possession of a controlled substance in her closing argument; and

4. The cumulative weight of the foregoing errors warranted a new trial.

*Id.* at 40. On April 24, 2008, the Supreme Court of Appeals of West Virginia denied

petitioner's petition for appeal, with two Justices dissenting from the denial. [Doc. 14-5 at

3].

On August 12, 2008, petitioner filed a *pro se* petition for writ of habeas corpus in the

Circuit Court of Berkeley County. *See* [Doc. 14-6]. The Circuit Court appointed counsel

for petitioner, and petitioner filed an amended petition for writ of habeas corpus on July 7,

2010. [Doc. 14-8 at 5]. The amended petition claimed:

1. Ineffective assistance of counsel;

2. Violation of due process for failure to suppress petitioner's statements;

3. Cruel and unusual sentence in violation of the Eighth Amendment;

4. Violation of due process by State's witnesses giving false testimony;

5. Insufficiency of the evidence;

6. Petitioner lacked competency to stand trial;

7. Unconstitutionality of the West Virginia felony murder statute; and

8. Seven other grounds, including defective indictment, erroneous information in the presentence report, irregularities in arrest, excessive bail, improper use of informers/failure to confront witnesses, improper statements by prosecution, and excessive sentence.

*See* [Doc. 14-7]. The Circuit Court denied petitioner's amended petition on September 21, 2011. [Doc. 14-8 at 1]. Petitioner subsequently appealed the denial of her petition to the Supreme Court of Appeals of West Virginia, which affirmed on January 14, 2013. [Doc. 14-9 at 4]. The instant petition timely followed.

## III. Legal Standard

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Supreme Court has recognized that motions for summary judgment may be used to test the factual sufficiency of the allegations in habeas proceedings. *See Blackledge v. Allison*, 431 U.S. 63, 80 (1977).

### B. Federal Habeas Review for Prisoners in State Custody

The statutory authority of a federal court to grant habeas corpus relief for prisoners in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Death Penalty Act of 1996 (AEDPA). Section 2254(d) substantially constrains federal review of an underlying state court decision; it is a guard against "extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through

appeal." ***Harrington v. Richter***, 131 S. Ct. 770, 786 (2011).

Under § 2254, when a prisoner's claim has been adjudicated on the merits in state court, habeas relief "shall not be granted" unless the state court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.[2] 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if its conclusion is opposite from one reached by the Supreme Court on a question of law, or if the decision differs from one rendered by the Supreme Court on materially indistinguishable facts. ***Williams v. Taylor***, 529 U.S. 362, 412–13 (2000). In contrast, a state court decision "unreasonabl[y] applies" federal law if the state court correctly identifies the governing legal principle, but unreasonably applies it to the facts of the prisoner's case. ***Id.*** at 413. Importantly, "a federal habeas court may not issue the writ simply because . . . [the state court] applied clearly established federal law erroneously or incorrectly"; "so long as fairminded jurists could disagree on the correctness of the state court's decision," a federal habeas court may not overturn it. ***Id.*** at 411; ***Harrington***, 131 S. Ct. at 786.

Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require a full opinion explaining the state court's reasoning. ***Harrington***, 131 S. Ct. at 784. Rather, where a state court issues a summary ruling, the federal court must independently review the record and the applicable federal law. ***Bell v.***

---

[2] Section 2254(d)(2) also permits habeas relief to issue where the state court proceeding resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. This Court finds that § 2254(d)(2) is not implicated here, as to the extent petitioner articulates objections to the state court's factual findings, she offers nothing to suggest that the state court engaged in unreasonable determinations of fact.

*Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000). The standard of review, however, remains deferential; the federal habeas court must uphold the state court's summary decision unless its independent review reveals that the state court decision contravenes, or unreasonably applies, clearly established federal law. *Id.*

With these principles in mind, this Court turns to petitioner's claims.

## IV.   Discussion

Petitioner raises ten grounds[3] for relief in her habeas petition before this Court:

1.    Insufficient evidence to prove petitioner guilty of felony murder because the State failed to prove delivery of a controlled substance, the predicate felony;

2.    Insufficient evidence to prove that the drugs petitioner gave the decedent caused the decedent's death;

3.    Felony murder is unconstitutional as applied to petitioner;

4.    Excessive sentence;

5.    Trial court erred in denying petitioner's proffered jury instruction on the lesser-included offense of delivery of a controlled substance;

6.    The prosecutor misstated the law regarding the offense of possession of a controlled substance in her closing argument;

7.    The state habeas court's failure to hold a hearing denied petitioner due process;

8.    Ineffective assistance of appellate criminal counsel;

9.    Ineffective assistance of trial counsel in failing to object to the prosecutor's misstatements;

10.   Ineffective assistance of trial counsel in failing to object to the jury instructions given once Count II of the indictment was dismissed.

---

[3] As Magistrate Judge Seibert noted in his R&R, petitioner's attached statement of grounds enumerates only four grounds. *See* [Doc. 10-1 at 1–5] ("Question #12"). In her answer to the petition, respondent divided the four grounds into eleven separate grounds. *See* [Doc. 13 at 1–2]. Magistrate Judge Seibert divided the four grounds into ten separate grounds, some of which overlap in the factual and constitutional issues raised. [Doc. 26 at 18]. For procedural efficiency, this Court will review petitioner's claims in accord with the ten-ground framework adopted by Magistrate Judge Seibert.

Petitioner spends most of her objections to the R&R "point[ing] out the Respondents misunderstanding of the facts" and correcting alleged mistakes in "the sequence of events that sadly led to Mr. Frockes self-induced drug overdose," failing to specifically address Magistrate Judge Seibert's findings. [Doc. 28 at 2]; *see id.* at 2–5. This Court, however, will construe petitioner's objections liberally, in accord with the leniency offered *pro se* filings. It appears that petitioner objects to the R&R's disposition of grounds one (1), two (2), six (6), eight (8), nine (9), and ten (10) of petitioner's petition,[4] as set forth above; this Court will therefore conduct a *de novo* review of same. As petitioner failed to object to Magistrate Judge Seibert's findings on grounds three (3), four (4), five (5), and seven (7), those findings are hereby **ADOPTED** for the reasons stated more fully in the Report and Recommendation.

### A.    Insufficient Evidence to Prove Predicate Felony

Petitioner's first claim is that there was insufficient evidence at trial to prove the predicate felony, delivery of a controlled substance. In her direct appeal, petitioner argued that because she and Frocke "jointly owned and possessed the drugs," petitioner never "delivered" the drugs to Frocke, as required to subject petitioner to the felony murder rule through proof of delivery of a controlled substance. [Doc. 14-4 at 26]. Petitioner cited case law from Minnesota state court and the Second Circuit in support of her position. *Id.* at 20–24. After the Supreme Court of Appeals of West Virginia rejected her argument,

---

[4] To the extent petitioner claims ineffective assistance of habeas counsel, that claim is not cognizable on federal habeas review. *See **Pennsylvania v. Finley***, 481 U.S. 551, 555 (1987) (holding that there is no constitutional right to counsel in post-conviction proceedings).

petitioner raised it once more in her state habeas petition, citing the same extrajurisdictional sources and contending that "the delivery [in fact] occurred when the individual in the trailer gave drugs to Petitioner for the benefit of Petitioner and every individual in the Krista Lite Motel room."  [Doc. 14-7 at 18].  Petitioner's objection will be **OVERRULED**.

When called upon to review a state-court conviction for constitutional infirmity, a federal habeas court has a duty to assess the factual record in order to determine whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, "does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  *Id.* at 318–19 (internal quotation omitted) (emphasis in original). Rather, the crucial question is whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.

Under the West Virginia felony-murder statute, "murder . . . in the commission of . . . a felony offense of manufacturing or delivering a controlled substance . . . is murder of the first degree."  W. Va. Code § 61-2-1.  "Delivery" of a controlled substance is defined as "the actual, constructive or attempted transfer from one person to another of . . . [a] controlled substance, whether or not there is an agency relationship."  *Id.* at § 60A-1-101.   Petitioner concedes that she gave Frocke the heroin he used in the motel room that night.  *See* [Doc. 28 at 4] ("Three witnesses stated I gave Jash (Frocke) **his** heroin." (emphasis in original)). Polkey and Chamblin both testified that petitioner produced the heroin from her purse and gave it to Frocke, and Robinson testified that later in the evening, Robinson heard petitioner

10

and Frocke "arguing about she already gave him his half of the heroin." [Doc. 14-2 at 88, 133, 168]. West Virginia law requires nothing more than an actual transfer; thus, the foregoing evidence was sufficient for a rational juror to find, beyond a reasonable doubt, that "delivery" occurred.

It appears to this Court that petitioner's real argument on this point concerns the proper interpretation of the law, not the sufficiency of the facts. Petitioner contends that when a single person purchases drugs from pooled money and then distributes the drugs among those who contributed to the pool, that act of distribution should not be considered a "delivery." On review of petitioner's state habeas petition, however, the West Virginia Supreme Court specifically rejected that argument, stating that while "other jurisdictions have chosen not to impose the felony murder rule in situations where jointly acquired and possessed substances cause a death by overdose, that is not the situation in West Virginia, . . . and that argument bears no light on the sufficiency of the evidence." [Doc. 14-8 at 22]. No matter this Court's opinion as to the wisdom of that outcome, that is the outcome that obtains in West Virginia, as dictated by West Virginia's highest court.[5] Petitioner's

---

[5] The trial court expressed some hesitation on this point:

> I think the pertinent point about delivery . . . is there's only one controlled substance delivery that requires remuneration, and that is misdemeanor possession of marijuana . . . It's the only time our legislature puts any financial or any other sort of intent on delivery of a drug. Delivery of a drug can be handing it on to the other, which apparently is the case here.

> Now you've got a very interesting argument in that . . . if two people are at a table and someone puts their heroin down and sits at the far end of the table and looks at someone [else] and says, hey, hand me my heroin, and you . . . give it to them and they die, under the reading of the cases in West Virginia it tends to say that satisfies the statute for the commission of felony murder.

objections as to ground one are therefore **OVERRULED**.

### B.    Insufficient Evidence to Prove Causation

Petitioner next claims that there was insufficient evidence to prove that the drugs petitioner gave Frocke were the actual cause of Frocke's death.  She argues that Frocke injected heroin "from his own personal stash" prior to injecting the heroin later purchased and distributed by petitioner, and that there is no way "of knowing the exact timing of [the] drug that killed him." [Doc. 10-1 at 3; Doc. 28 at 2].  As it appears to this Court that petitioner failed to exhaust this claim in state court, petitioner's objections as to same must be **OVERRULED**.

To exhaust his state remedies, a habeas petitioner must "fairly present" the substance of his claim to the state's highest court.  *Picard v. Connor*, 404 U.S. 270, 275–78 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (quoting *Picard*, 404 U.S. at 278).  The substance of a claim is fairly presented when "both the operative facts and controlling legal principles" are plainly placed before the state court.  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192, 205 (4th Cir. 2011) (quoting *Verdin v. O'Leary*, 972 F.2d 1467,

---

[. . .]

It's a very good argument, and maybe our Court will give us a better definition because I agree, the law is not very clear on it . . . .

[Doc. 14-2 at 242–43].  The facts of this case, moreover, are somewhat different from the facts of **State v. Rodoussakis**, 204 W.Va. 58, 511 S.E.2d 469 (1998), in which the West Virginia Supreme Court held that death resulting from an overdose subjects the deliverer of the controlled substance to the felony murder rule.  *Id.* at 65; *id.* at 63 (morphine dealer injected decedent with morphine three times prior to decedent's death).

1474 (7th Cir. 1992)). The petitioner cannot merely state the facts underlying an alleged constitutional violation; he must also explain how those facts establish that his rights were violated. *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994). Only those claims presented to the state court may be considered by the federal court. *See Picard*, 404 U.S. at 276–77 (holding state remedies unexhausted on a Fourteenth Amendment equal protection claim where the only constitutional claim raised below related to the Fifth Amendment's requirement of a grand jury indictment).

In West Virginia, a petitioner may exhaust state remedies either by raising the federal issue on direct appeal from his conviction, or in a post-conviction habeas corpus action filed in state court, denied, and then appealed to the West Virginia Supreme Court. *See Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D. W.Va. 1995) (direct appeal); *Bayerle v. Godwin*, 825 F. Supp. 113, 114 (N.D. W.Va. 1993) (post-conviction state habeas action).

A comparison of the issues raised in petitioner's federal habeas petition with those raised on direct appeal and in petitioner's state habeas action reveals that petitioner has never presented this argument in state court. *See* [Doc. 14-4 at 19–21] (direct appeal); [Doc. 14-6 at 15–23; Doc. 14-7 at 14–18] (state habeas petition). Because petitioner failed to exhaust her state remedies, this Court may not reach the question whether sufficient evidence as to causation was presented to the jury. At this time, this Court therefore **DECLINES TO ADOPT** the R&R's findings on this point, and petitioner's objections are **OVERRULED**.

### C.     Prosecutor's Misstatement of the Law

In her federal habeas petition, petitioner states that "Prosecutor's misstatement of

13

law at closing is in complete violation of petitioners Due Process rights as [g]uaranteed by the US Constitution," and characterizes the misstatement as "intentional." [Doc. 10 at 2, 4]. Petitioner fails to set forth the specific misstatement to which she refers. Throughout the course of petitioner's state proceedings, however, petitioner did take issue with two statements made by the prosecutor during closing argument. In considering each statement, this Court concludes that petitioner's objections must be **OVERRULED**.

The first statement at issue, which petitioner raised on direct appeal, was as follows:

> What [petitioner] did was . . . she delivered those drugs that were ingested by [Frocke]. There's still the delivery. The crime is delivery. [Defense counsel] quoted you a code section that says possession is a misdemeanor. Guess what, possession of a Schedule I substance is a felony.

[Doc. 14-3 at 62; Doc. 14-4 at 30–32].

A prosecutor's misstatement of the law is not as serious an error as a court's misstatement of the law in an instruction to the jury, as statements from counsel are "billed in advance to the jury as matters of argument, not evidence." *Boyde v. California*, 494 U.S. 370, 384–85 (1990). This is not to say that a misstatement from counsel can never have decisive effect—only that it lacks the force of an instruction from the court. *Id.* Further, in determining the gravity of an attorney's misstatement, the misstatement "must be judged in the context in which [it is] made." *Id.* at 385. The ultimate inquiry is "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a violation of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

Judged in context, this Court concludes that this misstatement does not rise to the

level of constitutional significance. While the prosecutor did incorrectly state that possession of heroin is a felony, the underlying felony with which petitioner was charged was *delivery* of a controlled substance. Defense counsel's argument immediately prior to the prosecutor's rebuttal unambiguously directed the jury toward consideration of the correct predicate felony. *See, e.g.*, [Doc. 3 at 50] ("How can you deliver something that is already yours? . . . It wasn't a delivery between [Frocke] and Nicole."). Defense counsel noted that possession of a controlled substance was a misdemeanor only in order to make an argument: he distinguished drug possession, a misdemeanor, from drug delivery, a felony, to argue that the state legislature intended to exclude less severe conduct from the purview of felony murder. *Id.* at 50–52.

Further, the trial court's instructions to the jury made the predicate crime and the findings required to convict petitioner manifestly clear. The trial court properly instructed the jury that in order to convict petitioner of felony murder, the State had to prove, beyond a reasonable doubt, that petitioner had "the intent at the time to commit the offense of felonious delivery of a schedule I controlled substance" and "did knowingly deliver to Jashua Frocke a schedule I controlled substance, to wit: heroin . . . ." [Doc. 3 at 25]. "[J]uries are presumed to follow their instructions," **Richardson v. Marsh**, 481 U.S. 200, 211 (1987), and here the trial court's instructions made plain that a *delivery* of heroin—not merely a possession—was necessary to convict petitioner of felony murder.

Petitioner raised a second prosecutorial statement in her state habeas petition, arguing, in full, that "[i]n Closing Statement Prosecutor instructed jury that delivery does not mean sale." [Doc. 14-3 at 22]. The prosecutor's full statement was as follows:

Now you may think to yourself, well, is there a difference between delivery and sale. Delivery, ladies and gentleman, is the common sense meaning of the word. It doesn't mean you have to be handed money for delivery to happen . . . . If I hand you something, is that delivery? Yes. I've given it to you.

[Doc. 14-3 at 36]. As petitioner offered nothing to support this claim (or several others in her state habeas petition), it was among those summarily denied by the Circuit Court. *See* [Doc. 14-8 at 25]. On appeal, the Supreme Court of Appeals of West Virginia adopted and incorporated the Circuit Court's opinion without further elaboration. *See* [Doc. 9 at 3–4]. As previously explained,[6] when a state court summarily denies a claim without providing its reasoning, the federal court conducts an independent review of the record to determine whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law.

With respect to this second statement, this Court likewise finds no error of constitutional magnitude. Although counsel should not have attempted to define the law for the jury, counsel defined it correctly: under West Virginia law, "delivery" does *not* mean "sale." *See* W. Va. Code. § 60-1-101 ("'[D]elivery' means the actual, constructive, or attempted transfer from one person to another of . . . a controlled substance"); ***State v. Ashworth***, 170 W.Va. 205, 211, 292 S.E.2d 615, 621 (1982) ("Nor does the culpability of the person who delivers the controlled substance depend upon whether that person received compensation, pecuniary or otherwise, from the transaction."); *see also* [Doc. 14-2 at 242–43] ("[T]here's only one controlled substance delivery that requires remuneration, and that is misdemeanor possession of marijuana . . . It's the only time our legislature puts

---

[6] *See* section III.B, *supra*.

any financial or any other sort of intent on delivery of a drug. Delivery of a drug can be handing it on to the other, which apparently is the case here."). Moreover, the jurors were instructed "to apply the law as given [to] you by the Court." [Doc. 14-3 at 23].

Neither of these statements "so infected" the proceedings with unfairness that petitioner was deprived of due process. Consequently, this Court finds that neither the state appellate court nor the state habeas court issued decisions on this point contravening or unreasonably applying clearly established federal law. Petitioner's objections are **OVERRULED**.

### D. Ineffective Assistance of Counsel

Petitioner raises ineffective assistance of counsel in grounds eight (8), nine (9), and ten (10) of her petition. Each will be considered in turn, and petitioner's objections as to each ground will be **OVERRULED**.

Ineffective assistance of counsel claims are evaluated under the two-part framework set forth by the Supreme Court in ***Strickland v. Washington***, 466 U.S. 668 (1984). In order to demonstrate that counsel was constitutionally deficient, a claimant must show two things: first, that counsel "made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment," and second, that but for counsel's errors, the result of the proceeding would have been different. ***Id.*** at 687. These two prongs of the ***Strickland*** test are known as "performance" and "prejudice." ***Fields v. Att'y Gen. of Md.***, 956 F.2d 1290, 1297 (4th Cir. 1992).

In order to satisfy the "performance" prong, the defendant must show that "counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  Further, the defendant must overcome the strong presumption that counsel's performance "f[ell] within the wide range of professionally reasonable assistance."  *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). In order to satisfy the "prejudice" prong, the defendant must show that counsel's errors affected the ultimate outcome of trial; a mistake, even if professionally unreasonable, "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 691.  If a defendant cannot show prejudice, performance need not be considered by a reviewing court.  *Fields*, 956 F.2d at 1297.

In the context of an appeal, in order to satisfy *Strickland*'s performance prong, the claimant must show that appellate counsel was "objectively unreasonable, in failing to find arguable issues to appeal—that is, counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  If the claimant can make that showing, she must then demonstrate prejudice: a reasonable probability that, but for appellate counsel's unreasonable failures, she would have prevailed on her appeal.  *Id.*

### i.    *Appellate Criminal Counsel*

Petitioner argues in her petition to this Court that appellate counsel was ineffective by stating that counsel's "lack of advancing claims on direct appeal that clearly needed addressed, but sadly[,] were not[,] is the point in itself."  [Doc. 10-1 at 4].  Petitioner offers nothing further in support.  In her state habeas petition, petitioner claimed that appellate counsel failed to raise the sufficiency of the indictment, failed to argue that the trial court

18

erred by admitting certain statements made by petitioner, and failed to challenge the constitutionality of the West Virginia felony murder statute. [Doc. 14-7 at 10]. The state habeas court found that these contentions lacked merit, [Doc. 14-8 at 17–18], and this Court agrees.

Appellate counsel has no duty to present every colorable argument to the appellate court; in fact, such a strategy is often counterproductive. ***Jones v. Barnes***, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal . . . . The effect of adding weak arguments will be to dilute the force of the stronger ones."). Appellate counsel must be afforded "the presumption that he decided which issues were most likely to afford relief." ***Bell***, 236 F.3d at 164 (internal quotations omitted). Petitioner provides no factual support or argument related to these three claims, and has thus failed to demonstrate that appellate counsel was objectively unreasonable in omitting them on direct appeal. Petitioner's objections on this point are **OVERRULED**.

### ii.    *Trial Counsel: Failure to Object to Prosecutor's Misstatements*

Petitioner contends, for the first time, that her trial counsel was ineffective for failing to object to the prosecutor's misstatements of law in her rebuttal argument. As petitioner failed to raise this claim in her state habeas proceeding, this claim is unexhausted, and this Court need not reach the merits. *See* section IV.B, *supra*. A court may deny a habeas petition on the merits notwithstanding the petitioner's failure to exhaust, however, and this Court agrees with Magistrate Judge Seibert that denial on the merits is appropriate here. As set forth in section IV.C, *supra*, the prosecutor's misstatement could not have prejudiced

petitioner, as the trial court properly instructed the jury that petitioner's felony murder charge was based on the *delivery* of a controlled substance, not mere possession, and that in order to find petitioner guilty, the State had to prove, beyond a reasonable doubt, that petitioner intended to deliver heroin to Frocke. Petitioner's objections on this point are **OVERRULED**.

### iii. Trial Counsel: Failure to Object to Jury Instructions

Finally, petitioner claims that trial counsel was ineffective in failing "to object to the jury instructions once the underlying felony charge had been dropped." [Doc. 10-1 at 4]. This claim is not only unexhausted, it is also factually incorrect, as trial counsel *did* object to the omission of "delivery of a controlled substance," as a lesser-included offense, from the jury instructions. Specifically, when reviewing the instructions with the attorneys, the court asked defense counsel: "If you want to note your objection to not including the lesser included," to which trial counsel responded: "I certainly do. Thank you. I object. There you go. So we're on the record." [Doc. 14-3 at 18]. Accordingly, petitioner's objection is **OVERRULED**.

## CONCLUSION

Upon careful review of the record, this Court hereby **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the magistrate judge's Report and Recommendation **[Doc. 26]** for the reasons stated above. Petitioner's Objections **[Doc. 28]** are **OVERRULED**. Respondent's Motion for Summary Judgment **[Doc. 14]** is hereby **GRANTED**, and Petitioner's Motion to Compel **[Doc. 24]** and Motion to Appoint Counsel and for Evidentiary Hearing **[Doc. 25]** are hereby **DENIED as moot**.

Accordingly, this Court hereby **DENIES** and **DISMISSES with prejudice** grounds one, three, four, five, six, seven, eight, nine, and ten of petitioner's § 2254 petition **[Doc. 1]**, as set forth in section IV, *supra*. As ground two of petitioner's § 2254 petition is unexhausted, that ground is hereby **DISMISSED without prejudice**. This matter is **ORDERED STRICKEN** from the active docket of this Court, and the Clerk is hereby **DIRECTED** to enter judgment in favor of the respondent.

As a final matter, upon an independent review of the record, this Court hereby **DENIES** petitioner a certificate of appealability on her dismissed claims, finding that petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to counsel of record and to mail a true copy to the *pro se* petitioner.

**DATED:** January 31, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE